# EXHIBIT  B

to

Defendants' Designation of Non-Parties

*NGC Development, LLC v. Seter & Vander Wall, P.C., et al.*
*Case No.: 1:21-cv-01746-RM-STV*

Filing # 88837038 E-Filed 05/01/2019 03:55:24 PM

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

AVID HUNTER, LTD., a Florida limited
partnership,

              Plaintiff,

v.

RUSSELL L. MILLS and JUSA
MANAGEMENT, LLC, a Florida limited
liability company,

              Defendants.

Case No.

## **COMPLAINT**

Plaintiff, Avid Hunter, Ltd. ("Avid Hunter"), by and through its undersigned counsel,

hereby brings this action against Defendants Russell L. Mills ("Defendant Mills") and JUSA

Management, LLC ("JUSA-M"), and alleges as follows:

### **INTRODUCTION & NATURE OF DISPUTE**

1.    Avid Hunter has multi-million dollar real estate investments held through various

entities, but under the control—directly and indirectly—of an individual manager, Defendant

Mills, who has engaged in illegal and improper conduct.

2.    This lawsuit is an exigent legal action to extricate the entities presently burdened

with, *inter alia*, Defendant Mills' self-dealing, negligent mismanagement, obstruction, conversion,

and waste from any further and irreparable harm, while seeking to preserve remaining assets.

3.    Defendant Mills has engaged in protracted and calculatedly manipulative efforts to

conceal his misconduct, culminating in the frustration of Avid Hunter's statutory and contractual

right to inspect, review, and make copies of the corporate books and records of the entities

managed by Defendant Mills (which are only expected to provide evidence in support of the claims

1

asserted in this lawsuit) and Defendant Mill's refusal to execute documents effectuating his voluntarily resignation from the entities he manages (which was, ostensibly, only a tactic to stall the commencement of this lawsuit).

4.      Through this Complaint, Avid Hunter respectfully requests that this Court enter an order compelling Defendants to provide access to books and records, appoint a receiver, enter a declaratory judgment removing Defendant Mills (directly and indirectly) as manager from JUSA-M and JUSA-D, and enter judgment for damages (including attorneys' fees).

## PARTIES

5.      Avid Hunter is, and at all times herein mentioned was, a limited partnership organized and existing under the laws of the State of Florida, with its principal place of business at 800 S. Dillard Street, Winter Garden, Florida 34787.

6.      JUSA-M is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 2404 N. Rio Grande Avenue, Orlando, Florida 32804.

7.      Defendant Mills is an individual domiciled in the State of Florida and residing in Orange County.

## JURISDICTION & VENUE

8.      This is an action for monetary, injunctive, and other equitable relief, which seeks damages exceeding $15,000 dollars exclusive of interest, costs, and attorney's fees.

9.      This Court is vested with jurisdiction over JUSA-M because it is a limited liability company organized and existing under the laws of, and authorized to conduct business within, the State of Florida.  This Court is vested with jurisdiction over Defendant Mills because he is an individual citizen of, and resides within, the State of Florida.

10. Venue is proper in Orange County, Florida pursuant to Section 47.011, Florida Statues, because each of the Defendants resides in Orange County, Florida.

**RELATIONSHIPS & STRUCTURE**

**I.**   **The Companies**

11. Avid Hunter is an investor and member in the following companies:

 a. NGC Development, LLC ("NGC"), a Florida limited liability company, with its principal place of business at 2404 N. Rio Grande Avenue, Orlando, Florida 32804.

 b. Founders Ridge Development, LLC ("FRD"), a Delaware limited liability company authorized to conduct business within the States of Delaware and Florida, with its principal place of business at 2404 N. Rio Grande Avenue, Orlando, Florida 32804;

 c. JUSA Development, LLC ("JUSA-D"), a Florida limited liability company, with its principal place of business at 2404 N. Rio Grande Avenue, Orlando, Florida 32804; and

 d. JUSA-M.

12. NGC, FRD, JUSA-D, and JUSA-M are referred to herein, collectively, as the "Companies."

**II.**   **The Governing Agreements**

13. This dispute is governed by the terms and provisions within the following agreements:

 a. the Amended & Restated Limited Liability Company Agreement of NGC (the "NGC LLC Agreement");

 b. the First Amendment to the NGC LLC Agreement (the "Amended NGC

- 3 -

Agreement");

    c.    the Amended & Restated Limited Liability Company Agreement of FRD (the "FRD Agreement");

    d.    the Operating Agreement of JUSA-D (the "JUSA-D Agreement"); and

    e.    the Operating Agreement of JUSA-M (the "JUSA-M Agreement").

14.    True and correct copies of the NGC LLC Agreement, the Amended NGC Agreement, the FRD Agreement, the JUSA-D Agreement, and the JUSA-M Agreement are attached hereto as **Exhibits "A", "B", "C", "D",** and **"E"**, respectively (collectively, the "Governing Agreements").

### III.    Avid Hunter's Interest in the Companies

15.    In 2016, Avid Hunter obtained, or otherwise secured, additional membership interests in each of the Companies.

16.    On or about September 11, 2016, RMA Asset Management, Ltd. ("RMA") executed agreements assigning its membership interests in NGC and FRD to Avid Hunter (the "RMA Assignments"). True and correct copies of the RMA Assignments are attached hereto as **Exhibits "F" and "G,"** respectively.

17.    In 2016, Terra Asset Management, Ltd. ("TAM") executed an agreement assigning its membership interests in FRD to Avid Hunter (the "TAM Assignment"). A true and correct copy of the TAM Assignment is attached hereto as **Exhibit "H"**.

18.    In 2016, Thofa Holdings, Ltd. ("Thofa") executed an agreement assigning its membership interests in JUSA-D to Avid Hunter (the "Thofa Assignment"). A true and correct copy of the Thofa Assignment is attached hereto as **Exhibit "I"**.

19.    In 2016, Carl-Christian Thier ("Thier") executed agreements assigning his membership interests in JUSA-D and JUSA-M to Avid Hunter (the "Thier Assignments" and,

together with the RMA Assignments, the TAM Assignment, and the Thofa Assignment, the "2016 Assignments"). True and correct copies of the Thier Assignments are attached hereto as **Exhibits "J" and "K,"** respectively.

20.     By virtue of the 2016 Assignments, which post-date and supersede the ownership interests within the Governing Agreements, Avid Hunter holds ownership interests in each of the Companies as follows:

    a.     90% interest in NGC;

    b.     90% interest in FRD;

    c.     57% interest in JUSA-D; and

    d.     50% interest in JUSA-M.

21.     Accordingly, Avid Hunter has standing to bring this action as a party in interest.

## IV.     Management Structure

22.     Pursuant to the Governing Agreements, each of the Companies is a manager-managed limited liability company, whereby the activities, operations, and affairs are decided exclusively by a manager rather than by the company's members.

23.     JUSA-M serves as the manager for NGC and FRD.

24.     Defendant Mills, in turn, serves as the manager for JUSA-M.  True and correct copies of JUSA-M's Annual Reports from 2010 to 2018 evidencing Defendant Mill's role as manager are attached hereto as **Exhibit "L"**.

25.     Defendant Mills also serves as manager for JUSA-D.  True and correct copies of JUSA-D's Annual Reports from 2010 to 2018 evidencing Defendant Mill's role as manager are attached hereto as **Exhibit "M"**.

26.     The following is a graphical depiction of the Parties' relationships and structure:



## **FACTUAL BACKGROUND**

**V.      Avid Hunter's Right to Inspect the Companies' Books and Records**

      **A.      Avid Hunter's Statutory Right of Inspection**

      27.      Avid Hunter is, and at all material times was and continues to be, entitled to the Companies' books and records as a matter of law.

      28.      Section 605.0410 of the Florida Revised Limited Liability Company Act (the "Florida Act") provides Avid Hunter with the right to "inspect and copy" books and records of NGC, JUSA-D, and JUSA-M upon "reasonable notice."   In particular, the Florida Act mandates that Avid Hunter be granted access to:

(d) Copies of [NGC, JUSA-D, and JUSA-M]'s federal, state, and local income tax returns and reports, if any, for the 3 most recent years.

(e) Copies of the financial statements of [NGC, JUSA-D, and JUSA-M], if any, for the 3 most recent years.

29.     Section 18-305 of the Delaware Limited Liability Company Act (the "Delaware Act") provides Avid Hunter with "the right" to petition the Court to obtain FRD's books and records "upon reasonable demand."  In particular, the Delaware Act mandates that Avid Hunter be granted access to:

(1) True and full information regarding the status of the business and financial condition of [FRD];

(2) Promptly after becoming available, a copy of [FRD]'s federal, state and local income tax returns for each year; [and]

…

(6) Other information regarding the affairs of [FRD] as is just and reasonable.

30.     Defendant Mills, acting individually and through JUSA-M, has consistently and intentionally frustrated Avid Hunter's statutory right to conduct an on-premises inspection and review of each of the Companies' books and records.

**B.      Avid Hunter's Contractual Right to Access Books and Records**

31.     Avid Hunter also is entitled to inspect, review, and copy each of the Companies' books and records pursuant to the provisions of the Governing Agreements.

32.     Pursuant to Section 9.1B of the NGC LLC Agreement:

After giving reasonable advance notice to [NGC], any Member may inspect and review [NGC]'s records and may, at the Member's expense, have [NGC] make copies of any portion or all of [NGC's] records.

Ex. A § 9.1B.

33.     Pursuant to Section 9.1B of the FRD Agreement:

> After giving reasonable advance notice to [FRD], any Member may inspect and review [FRD's] records and may, at the Member's expense, have [FRD] make copies of any portion or all of [FRD's] records.

Ex. C § 9.1B.

34.   Pursuant to Section 5.1 of the JUSA-D Agreement:

> The Manager shall cause [JUSA-D] to maintain…full and accurate books…as are required to be maintained by [JUSA-D] pursuant to 608.4101 of the [Florida] Act… Any Member may, at any time during the regular business hours, after giving reasonable notice … inspect and copy (at such Member's expense) any of [JUSA-D]'s required records as described in Section 608.4101 of the [Florida] Act.

Ex. D § 5.1.

35.   Pursuant to Section 5.1 of the JUSA-M Agreement:

> The Manager shall cause [JUSA-M] to maintain…full and accurate books…as are required to be maintained by [JUSA-M] pursuant to 608.4101 of the [Florida] Act… Any Member may, at any time during the regular business hours, after giving reasonable notice … inspect and copy (at such Member's expense) any of [JUSA-M]'s required records as described in Section 608.4101 of the [Florida] Act.

Ex. E § 5.1.

36.   As set forth above, each of the Governing Agreements provides Avid Hunter with a contractual right to access, review, inspect, and copy each of the Companies' books and records.

**VI.   Defendant Mills' Breach of the Governing Agreements**

37.   Defendant Mills' primary role, individually and in his capacity as manager of JUSA-M, was to facilitate the return on investment in certain real properties owned by NGC and FRD.  Despite clear statutory, fiduciary, and contractual obligations to the contrary, Defendant Mills has engaged in, or otherwise caused JUSA-M to engage in, actions to the detriment of the Companies.  Specifically, Defendant Mills has, among other things: i) prevented Avid Hunter from

exercising its right to inspect the Companies' books and records; and ii) caused JUSA-M to make unsupported and unsubstantiated loans to other entities owned, controlled by, or benefitting Defendant Mills.

38.     On November 13, 2018, Avid Hunter exercised its statutory and contractual rights by sending a letter to Defendant Mills and JUSA-M demanding the opportunity to inspect and review the Companies' books and records (the "First Demand Notice").  A true and correct copy of the First Demand Notice is attached hereto as **Exhibit "N"**.

39.     The First Demand Notice requested that JUSA-M provide documents and information related to "business…and financial condition" of the Companies by November 21, 2018.  *See* Ex. N at 2.  The letter also urged Mills to resign from his position as manager, and enclosed a resignation notice for Defendant Mills to execute and deliver by November 21, 2018. *Id*.

40.     JUSA-M, through Defendant Mills, responded to the First Demand Notice by email on November 16, 2018, and represented that JUSA-M would need additional time to comply because Defendant Mills was facing health issues.  A true and correct copy of JUSA-M's First Response is attached as **Exhibit "O"**.

41.     On December 21, 2018, Avid Hunter, by and through its counsel, sent a second letter to Defendant Mills reiterating its demand that he resign as manager (the "Second Demand Notice").  A true and correct copy of the Second Demand Notice is attached hereto as **Exhibit "P"**.

42.     While acknowledging that Defendant Mills was "facing health issues" requiring a reasonable extension, the Second Demand Notice noted that Defendant Mills had previously communicated his willingness to resign and demanded that he do so by January 15, 2019.  *See* Ex.

P at 2.

43.    Defendant Mills did not respond directly to the Second Demand Notice.  Rather, on January 15, 2019, Defendant Mills wrote an email that inappositely claimed to have a "financial interest" in certain entities and conditioned his "vote in favor of" JUSA-M resigning as manager as being subject to unspecified, "terms and conditions."  A true and correct copy of the January 15, 2019 email is attached hereto as **Exhibit "AA"**.  Nevertheless, Defendant Mills continued to ignore Avid Hunter's requests that he resign, and not to cooperate with Avid Hunter's requests to schedule a mutually convenient date for an inspection of the Companies' books and records or otherwise respond with a date on which such an inspection would occur.

44.    On February 2, 2019, Avid Hunter sent a third letter reiterating its demands yet again (the "Third Demand Notice").  A true and correct copy of the Third Demand Notice is attached hereto as **Exhibit "Q"**.  This third attempt, like the two that preceded it, set forth clear and unambiguous deadlines, including demands that Defendant Mills:

a.    resign from his position as manager "before 5:00 pm Eastern Time on February 15, 2019";

b.    make the Companies' books and records available for inspection "within the next fourteen (14) business days";

c.    confirm the timing of the inspection "as soon as practicable but, in any event, before February 8, 2019"; and

d.    take "immediate action to preserve, and prevent destruction or deletion" of any and all documents relevant to litigation regarding his management of the Companies.

Ex. Q, at 2-3.

45.     Frustrated by the constant excuses and delays, Avid Hunter sent a fourth letter on February 28, 2019 (the "Fourth Demand Notice"). A true and correct copy of the Fourth Demand Notice is attached hereto as **Exhibit "R"**.

46.     Due to Defendant Mills' continued failure to acknowledge or even respond to prior demands, the Fourth Demand Notice notified Defendant Mills that Avid Hunter had retained the services of a forensic accounting firm, RSM US LLP ("RSM"), to conduct an inspection of the Companies' books and records on "March 13 and 14, 2019, beginning at 9:00 a.m. . . . and continuing business day-to-business day, during regular business hours until completed." Ex. R, at 1.

47.     JUSA-M, through Defendant Mills, responded to the Fourth Demand Notice by email on March 8, 2019, offering further excuses as to why the inspection could not occur. A true and correct copy of the March 8, 2019 email is attached hereto as **Exhibit "S"**.

48.     Specifically, Defendant Mills stated that JUSA-M's financial system is "rather complex" and that its comptroller was the only "person trained on that system." *See* Ex. S. Defendant Mills claimed that because the comptroller was sick and addressing a family medical issue, JUSA-M would follow up with Avid Hunter once the comptroller was available. *Id.*

49.     Defendant Mills further claimed that JUSA-M had already "provided all the financial statements, bank records, etc via two disks which were sent FedEx." *Id.* However, a review of the documents sent via FedEx clearly demonstrates that they were not sufficient to satisfy JUSA-M's obligations with respect to the Companies' books and records. For example, the documents that have been provided are, among other things:

    a.  limited in scope, as they only provide records with respect to FRD and NGC;

    b.  purely provisional, as the records are labeled "preliminary" rather than final;

and

    c.   incomplete, as the most recent records provided are dated as of 2017.

50.     Finally, in response to Avid Hunter's repeated demand for his resignation, Defendant Mills unequivocally stated that his "intention is to resign," but repeated his incorrect contention that he cannot do so without "unanimous approval from the Members of Founders Ridge Development and NGC Development." *See* Ex. S. To the contrary, Defendant Mills may resign from JUSA-D and JUSA-M at any time.

51.     Avid Hunter informed JUSA-M that the assistance of the comptroller was not necessary, and that it intended the inspection to proceed as noticed on March 13 and 14, 2019. When RSM arrived at JUSA-M's offices on March 13, 2019, however, it was denied access, informed that Defendant Mills was not there, and forced to leave empty-handed. *See* Affidavit of Tyler Gonzalez, at ¶ 6, attached hereto as **Exhibit "T"**.

52.     After discovering RSM had been denied access, Avid Hunter informed Defendant Mills that RSM would be appearing—as scheduled and properly noticed—the next day, to again attempt to exercise the Companies' right to conduct an on-premises inspection.

53.     Despite turning RSM away just hours earlier, Defendant Mills responded via email claiming that JUSA-M is "continuing to be cooperative [and] putting together all the information you have requested." *See* JUSA-M Email, dated March 13, 2019 at 2:10 p.m., attached hereto as **Exhibit "U"**. Nevertheless, the same scenario occurred again the following day. RSM showed up, but was promptly turned away. *See* Ex. T at ¶ 7. To date, Avid Hunter has not received access to the Companies' books and records, as required by statute and the Governing Agreements, due to Defendant Mills' negligent and willful misconduct.

54.     Following Defendant Mills' clear violation of the Governing Agreements, Avid

Hunter reiterated its demand that he resign as manager. On March 21, 2019, Avid Hunter provided Defendant Mills with documentation by email allowing him to resign as manager from JUSA-D and JUSA-M. A true and correct copy of the March 21, 2019 email and its attachments is attached hereto as **Exhibit "V"**. In that email, Avid Hunter informed Defendant Mills that, consistent with his prior statements, the attached documents must be "executed by you, in all capacities, and returned… no later than March 25, 2019." *See* Ex. V.

55.     Consistent with his prior conduct, Defendant Mills waited until the last minute to convey his intention to ignore Avid Hunter's demands. On March 25, 2019, Defendant Mills sent an email stating:

> I thought I would be back today but will not make it. This is not the
> time I need to be dealing with these matters. I am hoping to be back
> by the end of this week, if not earlier and will deal with this then.

*See* Defendant Mills Email, dated March 25, 2019 at 10:01 a.m., attached hereto as **Exhibit "W"**.

56.     Avid Hunter subsequently updated its prior emails by forwarding Defendant Mills partially executed copies of the resignation documents on March 28, 2019 and April 2, 2019, requiring only Defendant Mills' signature in his individual and other various capacities to become effective. However, Defendant Mills failed to respond to either of these communications.

57.     As a result of his negligent and willful misconduct, Defendant Mills continues to breach his, and cause JUSA-M to breach its, obligations to provide Avid Hunter with access to inspect and copy the Companies' books and records despite Avid Hunter providing five (5) months notice of repeated demands for access.

## VII.    Defendant Mills Causes JUSA-M to Breach its Obligations to Manage the Companies' in a Prudent Manner

58.     The limited documents that JUSA-M has provided to Avid Hunter demonstrate that Defendant Mills, upon information and belief, has engaged in illegal and improper conduct.

Because Defendant Mills continues to persist in refusing to make the Companies' books and records available for inspection, the following allegations are intended to be a non-exhaustive list of his grossly negligent, improper and illegal conduct.

59.     As such, Avid Hunter respectfully reserves the right to amend and add further claims to its pleadings after completion of a proper inspection of the Companies' books and records, which is expected to reveal further grossly negligent, improper, and illegal conduct by Defendant Mills.

### A.     The Water Rights Agreements & Failure to Make Distributions

60.     Defendant Mills, in his capacity as manager of JUSA-M, facilitated NGC's execution of two agreements for the sale of water rights in the State of Colorado, collectively generating more than $2.6 million in liquid proceeds.  Defendant Mills committed to provide the proceeds from these sales to Avid Hunter as a distribution under NGC's Operating Agreement.  However, Defendant Mills has since materially breached that Agreement by failing and refusing to distribute those funds to Avid Hunter.

61.     On October 16, 2016, NGC executed the first agreement for the sale of fifty (50) units of Northern Colorado Water Conservancy District Units ("NCWCD Units") of water to Fort Collins–Loveland Water District ("Fort Collins") (the "Fifty Unit Agreement").  A true and correct copy of the Fifty Unit Agreement is attached hereto as **Exhibit "X"**.  The Fifty Unit Agreement generated a total of $1,137,222.00 in proceeds less closing costs. *See* Ex. X, at 6, 10.

62.     On November 16, 2016, NGC executed a second similar agreement for the sale of sixty (60) NCWCD Units of water to Fort Collins (the "Sixty Unit Agreement" and, collectively with the Fifty Unit Agreement, the "Water Rights Agreements").  A true and correct copy of the Sixty Unit Agreement is attached hereto as **Exhibit "Y"**.  The Sixty Unit Agreement generated a total of $1,491,620.00 in proceeds less closing costs. *See* Ex. Y, at 5, 8.

63.     In a November 22, 2016 meeting between JUSA-M and Avid Hunter, Defendant Mills, in his capacity as manager of JUSA-M, represented to Avid Hunter that the funds generated from the Water Rights Agreements (less taxes and closing costs) would be distributed from NGC to Avid Hunter.  Defendant Mills also agreed to provide a schedule setting forth the amount of the distribution ("Distribution Schedule"), which clearly showed any deductions for tax or closing cost purposes, and wire the excess amount to Avid Hunter.

64.     By January 2017, the funds generated from the Water Rights Agreements had been successfully transferred to NGC's bank account, and for the next several months, Avid Hunter worked in good faith with Defendant Mills, in his capacity as manager of JUSA-M, to provide the information necessary for Defendant Mills to wire the funds to Avid Hunter's bank accounts in Germany; however, Defendant Mills continually failed to take any action to transfer such funds in breach of the Governing Agreements and his commitment to Avid Hunter in that regard.

65.     Over a year later, during a February 2018 meeting, Avid Hunter reminded Defendant Mills of JUSA-M's obligation to provide the Distribution Schedule and wire any excess funds generated from the Water Rights Agreements as a distribution from NGC to Avid Hunter. In that February 2018 meeting, Defendant Mills again represented that the Distribution Schedule and excess funds would be forthcoming, but failed to take any action.

66.     To date, JUSA-M has failed to satisfy its obligation provide the Distribution Schedule or wire any funds to Avid Hunter, resulting in a material breach of the Governing Agreements.  Instead, due to its failure and refusal to allow an inspection of the Companies' books and records, JUSA-M has breached its fiduciary duty to manage the Companies' assets in a prudent manner, as a result of, upon information and belief, Defendant Mills' fraudulent and grossly negligent conduct.

### B.    Self-Dealing Loan Transactions

67.    The limited financial documents provided to Avid Hunter also demonstrate that Defendant Mills directed JUSA-M to loan at least one million dollars to entities that he, upon information and belief, is affiliated with, has an interest in, and/or controls.

68.    Based on NGC's "preliminary" consolidated financials as of December 31, 2017, Defendant Mills caused NGC to make a total of $1,149,017.72 in loans to Westhaven Development, LLC ("Westhaven"), an entity Defendant Mills owns and/or controls, without Avid Hunter's consent or knowledge.

69.    Westhaven is a Delaware limited liability company, with its principal place of business at 2404 N. Rio Grande Avenue, Orlando, Florida 32804—notably, the same locale as NGC, JUSA-D, and JUSA-M.  According to public records, Westhaven has inactive status in the State of Florida because its manager failed to submit its annual report for 2018.

70.    Westhaven, in turn, is managed by The Greenwich Group, Inc. ("Greenwich"), a Florida corporation, with its principal place of business at 2404 N. Rio Grande Avenue, Orlando, Florida 32804—again, the same locale as Westhaven, NGC, JUSA-D, and JUSA-M.  According to public records, Defendant Mills serves as one of Greenwich's directors and operates as its registered agent.  True and correct copies of Greenwich's Annual Reports evidencing Defendant Mill's role as director are attached hereto as are attached hereto as **Exhibit "Z"**.

71.    Upon information and belief, Defendant Mills owns or materially controls Westhaven and Greenwich.  Accordingly, Defendant Mills breached his fiduciary duty as manager of JUSA-M (and has caused JUSA-M to breach its fiduciary duty to NGC), by causing NGC to loan $1,149,017.72 to Westhaven—an entity Defendant Mills owns and/or materially controls—without Avid Hunter's knowledge or consent.

72.    As shown on NGC's "preliminary" consolidated financials, these "loans" were

made through periodic transfers, over the course of a year, yet do not correspond with the $2.6 million in proceeds generated from the Water Rights Agreements. *See* Ex. Z; *see also* Ex. X at 6, 10; Ex. Y at 5, 8.  Upon information and belief, Defendant Mills has negligently and fraudulently caused JUSA-M to waste NGC's assets by, among other things, conducting self-interested transactions resulting in unaccounted for proceeds.

73.     Furthermore, because Defendant Mills continues to persist in refusing to make the Companies' books and records available for inspection, Avid Hunter has not been provided with any loan agreements, collateral agreements, or guaranties for the Westhaven loans, or any other loans made as a result of Defendant Mills' fraudulent, illegal, and grossly negligent direction and management of JUSA-M.

## COUNT I
### (Violation of Sections 605.0410-11, Florida Statutes for Court-Ordered Inspection)

74.     Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

75.     Section 605.0410(3), Florida Statutes provides that "[d]uring regular business hours and at a reasonable location specified by the company, a member may inspect and copy…[f]ull information regarding the activities, affairs, financial condition, and other circumstances of the company as is just and reasonable."

76.     Section 605.0411, Florida Statutes provides that "[i]f a limited liability company does not allow a member, manager, or other person who complies with [section 605.0410] to inspect and copy any records required by that section to be available for inspection, the circuit court … may summarily order inspection and copying of the records demanded, at the limited liability company's expense, upon application of the member, manager, or other person."

77.     Avid Hunter issued multiple demands to Defendant Mills, individually and in his

capacity as manager of JUSA-M, to inspect and copy information regarding the activities, affairs, and financial condition of the Companies. Those demands sought review of the Companies' books and records during regular business hours, at a reasonable location, provided sufficient notice, and otherwise complied with the conditions mandated by statute.

78.     Defendant Mills, individually and in his capacity as manager of JUSA-M, has rejected or ignored each of Avid Hunter's demands and prevented, and continues to prevent, Avid Hunter from inspecting the Companies' books and records.

79.     Defendant Mills' refusal of inspection has not been in good faith, on any reasonable basis, or because Avid Hunters' request is unrelated to its role as a member of each of the Companies.

80.     Defendant Mills has violated, or otherwise caused JUSA-M to violate, section 605.0410(3), Florida Statutes, which directly and proximately caused Avid Hunter to suffer damages.

### COUNT II
### (Breach of Contract)

81.     Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

82.     Avid Hunter issued multiple demands to Defendant Mills, individually and in his capacity as manager of JUSA-M, demanding that he make the Companies' books and records available for inspection and copying, as permitted under the Governing Agreements. In each instance, Avid Hunter complied with the Governing Agreements and applicable law in all respects and attempted to work with Defendant Mills in good faith to locate a mutually convenient time to inspect the Companies' books and records, despite Defendant Mills' continued attempts to frustrate Avid Hunter's rights under the Governing Agreements.

83. On February 28, 2018, Avid Hunter issued its Fourth Demand Notice, which stated that, *inter alia*, Avid Hunter had retained the services of RSM and would conduct its inspection on March 13 and 14, 2019, pursuant to its rights under the Governing Agreements. However, due to Defendant Mills' negligent and willful misconduct, RSM was denied access on either scheduled date.

84. Avid Hunter is entitled to inspect and copy the Companies' books and records pursuant to the Governing Agreements and applicable law, but has been denied such opportunity to confirm the financial viability of the Companies.

85. Defendant Mills' refusal of Avid Hunter's demands to exercise its right to inspection has not been in good faith, on any reasonable basis, or because Avid Hunters' demands were unrelated to its role as a member of each of the Companies.

86. Defendant Mills has breached, or otherwise caused JUSA-M to breach, its obligations under the Governing Agreements by repeatedly preventing Avid Hunter from inspecting the Companies' books and records.

87. Further, in his capacity as manager of JUSA-M, Defendant Mills caused NGC to, upon information and belief, enter into contractual agreements with other entities owned, controlled by, or benefitting Defendant Mills in violation of the NGC LLC Agreement. Specifically, in his capacity as manager of JUSA-M, Defendant Mills caused NGC to "loan" at least $1,149,017.72 to Westhaven, an entity controlled by Defendant Mills, without Avid Hunter's consent, knowledge, or any disclosure in advance thereof.

88. Pursuant to Section 7.1B of the NGC LLC Agreement, NGC's manager may not "enter into any contract or agreement with a Member or any Affiliate of a Member" without the unanimous consent of each of NGC's members, including Avid Hunter.

89.     By failing to obtain Avid Hunter's consent prior to entering into such transactions and agreements, Defendant Mills caused JUSA-M to breach its obligations under the NGC LLC Agreement.

90.     As a direct and proximate result of Defendant Mills actions, Avid Hunter has suffered damages.

## COUNT III
**(Breach of Fiduciary Duty and Violation of Sections 605.04091-92, Florida Statutes)**

91.     Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

92.     Defendant Mills, individually and in his capacity as manager of JUSA-M, voluntarily assumed and is charged with fiduciary duties towards i) JUSA-D, ii) JUSA-M, iii) each of the Companies managed by JUSA-M, and iv) Avid Hunter, as a member of each of the Companies, with relation to the management and operation of each of the Companies.

93.     Defendant Mills, individually and in his capacity as manager of JUSA-M, was required, among other things, to act in the best interest of the Companies, to not utilize his control of the Companies to create an unfair personal advantage, and to perform his duties in good faith and with such care as an ordinarily prudent person in a like position would exercise in similar circumstances.

94.     Upon information and belief, Defendant Mills deliberately, willfully, intentionally, maliciously, and without justification, privilege, or authority, breached his fiduciary duties by, among other things, using funds controlled by JUSA-M for his own personal benefit.  Specifically, in his capacity as manager of JUSA-M, Defendant Mills caused NGC to "loan" at least $1,149,017.72 to Westhaven, an entity controlled by Defendant Mills, without Avid Hunter's consent, knowledge, or any disclosure in advance thereof.

95.     As a direct and proximate result of Defendant Mills' actions, Avid Hunter has suffered damages. These damages are separate and distinct from any damages caused to the other members of the Companies.

**COUNT IV**
**(Fraud)**

96.     Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

97.     Prior to causing the Water Rights Agreements to be executed, Defendant Mills, in his capacity as manager of JUSA-M, represented and promised to Avid Hunter that JUSA-M would cause NGC to distribute the net proceeds generated from the Water Rights Agreements to Avid Hunter.

98.     At the time Defendant Mills made the above misrepresentations and false promises, a fiduciary relationship existed between Defendant Mills and Avid Hunter, and therefore Defendant Mills had a duty not to utilize his control of JUSA-M to create an unfair personal advantage by making misrepresentations and false promises regarding the allocation of funds under his control.

99.     Upon information and belief, Defendant Mills made the above misrepresentation and false promise with no intention of performing it. Instead, Defendant Mills intended to direct and divert the funds generated from the Water Rights Agreements to entities that he owns and/or controls, including causing NGC to "loan" said funds to Westhaven.

100.    Avid Hunter was unaware of the falsity of Defendant Mills' misrepresentation and false promises, believing them to be true. In reasonable and justifiable reliance on Defendant Mills' misrepresentation and false promise, Avid Hunter allowed Defendant Mills to proceed with execution of the Water Rights Agreements. Had Avid Hunter known the actual facts and

- 21 -

Defendant Mills' true intention, it would not have taken such action.

101.    As a direct and proximate result of Defendant Mills' fraud and deceit, Avid Hunter has sustained financial damages.

### COUNT V
### (Conversion)

102.    Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

103.    At all times herein mentioned, Avid Hunter was, and still is, entitled to immediate possession of the net proceeds generated by the Water Rights Agreements.

104.    On or about January 14, 2017, Defendant Mills notified Avid Hunter that the funds generated from the Water Rights Agreements had been successfully transferred to NGC's bank account.

105.    Upon information and belief, from January 2017 through December 2017, Defendant Mills utilized his control of JUSA-M to unlawfully, maliciously, and wantonly direct the funds generated from the Water Rights Agreements to entities under his exclusive control, including Westhaven.

106.    On or about February 2018, Avid Hunter demanded that Defendant Mills wire the funds generated by the Water Rights Agreements to Avid Hunter, but Defendant Mills failed and refused, and continues to fail and refuse, to do so.

107.    As a direct and proximate result of Defendant Mills' wrongful actions, Avid Hunter has suffered damages in an amount not less than the total proceeds generated by the Water Rights Agreements less any taxes and closing costs.

## COUNT VI
### (Negligence)

108.     Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

109.     Defendant Mills, individually and in his capacity as manager of JUSA-M, had a duty of care with respect to the management and operation of: i) JUSA-D, ii) JUSA-M, iii) each of the Companies managed by JUSA-M, and iii) Avid Hunter, as a member of each of the Companies.

110.     Defendant Mills' duty of care required that he, among other things, perform his duties in good faith and with such care as an ordinarily prudent person in a like position would exercise in similar circumstances.

111.     Defendant Mills negligently breached his duty of care by failing to act in the best interest of JUSA-D, JUSA-M, each of the Companies managed by JUSA-M, and Avid Hunter, as a member of each of the Companies.  Specifically, Defendant Mills breached his duty of care by failing to allow Avid Hunter to inspect and copy the Companies' books and records despite multiple properly noticed requests, and wasting the Companies' assets by, among other conduct, failing to distribute assets to Avid Hunter and, instead, diverting funds in self-interested transactions.

112.     As a direct and proximate result of Defendant Mills' wrongful actions, Avid Hunter has suffered damages.

## COUNT VII
### (Declaratory Relief for Removal as Manager)

113.     Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

114.     Defendant Mills, individually and through JUSA-M, serves as manager of the

- 23 -

Companies, and is responsible for the management, operation and control of each of the Companies.

115.    Defendant Mills has materially breached, or otherwise caused JUSA-M to materially breach, the Governing Agreements by, among other things, failing to allow Avid Hunter to inspect and copy the Companies' books and records despite multiple properly noticed requests; taking compensation from the Companies' in excess of the monthly management fee; and wasting the Companies' assets.

116.    Defendant Mills and JUSA-M's breaches of the Governing Agreements is sufficient cause to justify their removal as manager.

**COUNT VIII**
**(Request for Receivership and Accounting)**

117.    Plaintiff Avid Hunter restates and incorporates by reference paragraphs 1-73 of this Complaint.

118.    FRD and NGC own assets, including certain real properties, which are currently managed by JUSA-M.  Defendant Mills, in turn, manages JUSA-M.

119.    Defendant Mills has breached the Governing Agreements and engaged in waste of the Companies' assets.  Moreover, based on Defendant Mills' own statements, there is a deadlock with respect to material aspects of the Companies' management.  Among other disagreements, Defendant Mills has declined to resign despite his failure to provide the Companies' books and records, and because he purports to hold a financial interest in the Companies.

120.    Florida Statutes provide for the appointment of a receiver in the context of these circumstances.  The appointment of a receiver is critical to uncover the full extent of Defendant Mills' activities, to consider any appropriate action to recover missing proceeds, and to preserve, protect, and review the Companies' accounts and financial records.

121.    Avid Hunter, as a member of each of the Companies, therefore seeks judicial relief to remove Defendant Mills and JUSA-M as manager of the Companies, as applicable, and appoint a receiver to take possession of, care for, manage, and operate the Companies' assets and books and records for the benefit of each of the Companies' members.

122.    Unless a receiver is appointed to take possession of the Companies' assets, they will be subject to loss, waste, and destruction.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Avid Hunter respectfully requests that this Court:

123.    **ORDER** that JUSA-M and Defendant Mills, as applicable, immediately deliver, provide, or permit Plaintiff access to the books and records of NGC, FRD, JUSA-D and JUSA-M pursuant to the Governing Agreements and Florida law.

124.    **ORDER** that JUSA-M or Defendant Mills, as applicable, be removed as manager from each of the Companies.

125.    **ORDER** that a receiver be appointed to take possession of the Companies' assets, perform an accounting of the Companies' assets and liabilities, undertake all actions necessary to uncover the extent of Defendant Mills' activities, and undertake any and all other such actions as may be necessary and appropriate under the law.

126.    **AWARD** damages in an amount equal to all losses caused by Defendant Mills and JUSA-M's breach of fiduciary duty and misuse of Company funds.

127.    **AWARD** costs to Plaintiff for all expenses in bringing and maintaining this action, including reasonable attorney's fees pursuant to sections 501.2105, 605.0411, and 817.41(6), Florida Statutes.

128.    **GRANT** such other and further relief as this Honorable Court deems just and proper.

Dated: May 1, 2019                         Respectfully submitted,

                                           /s/ Robert D. Zebro
                                           Robert D. Zebro
                                           Florida Bar No. 691062
                                           Donald H. Crawford II
                                           Florida Bar No. 733431
                                           COPE, ZEBRO & CRAWFORD, P.L.
                                           14020 Roosevelt Boulevard, Suite 802
                                           Clearwater, Florida 33762
                                           Telephone: (727) 369-6070
                                           Facsimile: (727) 431-9080
                                           Email: rzebro@czcfirm.com
                                           Email: dcrawford@czcfirm.com
                                           *Attorneys for Plaintiff, Avid Hunter, Ltd.*