```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF COLORADO
 2

 3  NGC DEVELOPMENT, LLC,           .  Case No.  21-cv-01746-RM-STV
                                    .
 4            Plaintiff,            .
                                    .
 5  vs.                             .
                                    .  Alfred A. Arraj Courthouse
 6  KIM SETER, a Colorado citizen,. 901 19th Street
    SETER & VANDER WALL, P.C.,      .  Denver, CO  80294
 7                                  .
                                    .
 8            Defendants.           .
                                    .  September 23, 2022
 9  . . . . . . . . . . . . . . . .    11:31 a.m.

10          TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
              SCOTT V. VARHOLAK, UNITED STATES MAGISTRATE JUDGE
11
    APPEARANCES:
12
    For the Plaintiff:         Keating Wagner Polidori &
13                               Free, P.C.
                               By:  Ross Whiting Pulkrabek*
14                             1290 Broadway
                               Suite 600
15                             Denver, CO  80203
                               (303) 534-0401
16
    For the Defendants:        Gordon Rees Scully
17                               Mansukhani, LLP
                               By:  John M. Palmeri*
18                             Melissa Ann Wiese*
                               555 17th Street
19                             Suite 3400
                               Denver, CO  80202
20                             (303) 534-5145

21  Court Recorder:            Clerk's Office
                               U.S. District Court
22                             1929 Stout Street
                               Denver, CO  80294
23

24

25
```

```
 1  Appearances Continued:

 2
     Transcription Service:        AB Litigation Services
 3                                 216 16th Street, Suite 600
                                   Denver, CO   80202
 4                                 (303) 296-0017
     *All appearances telephonic.
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1                    (Time noted:  11:31 a.m.)
 2              THE COURT CLERK:  Court is in session.
 3              THE COURT:  This is 21-cv-1746.  Can I have
 4  entries of appearance, please?
 5              MR. PULKRABEK:  Yes.  Good morning, Your Honor.
 6  It's Ross Pulkrabek on behalf of NGC Development.
 7              THE COURT:  Good morning.
 8              MR. PALMERI:  Good morning, Your Honor.  John
 9  Palmeri and Melissa Wiese on behalf of Kim Seter and Seter &
10  Vander Wall P.C.
11              THE COURT:  And good morning.
12              We're here for a continued discovery dispute
13  concerning certain documents that Plaintiff requested an in-
14  camera review on.  I have reviewed those documents.
15              I have one question for Defense Counsel, but what
16  I want to do is I want to take that ex parte, but I wanted to
17  -- I didn't just reach out to Defense Counsel before this
18  hearing because I wanted Plaintiff to know that I was having
19  this ex parte conversation.  I have a question in reviewing
20  the documents that I want answered, but the question itself
21  may get into privilege, and so I don't want to ask the
22  question on the public record or with Plaintiff's Counsel on
23  the phone.
24              So what I'm going to ask -- I'm going to take a
25  brief recess.  I'm going to ask Defense Counsel to call my
```

1  chambers separately and ask that that be forward to me, then
2  I'll ask my question, and then I'll come back on the public
3  record.  All right.
4          So I'm going to take a brief recess.  And if
5  Defense Counsel can -- you're free to hang up this line and
6  then call back in.  But if you can call my chambers and
7  they'll pass you through to me.  Thank you.
8          MR. PALMERI:  And, Your Honor, do you mind, can we
9  get that number?
10          THE COURT CLERK:  I will provide it to them.
11          THE COURT:  Okay.  Mr. Palmeri --
12          MR. PALMERI:  Thank you.
13          THE COURT CLERK:  Sure.  That number is 303-335-
14  2365.
15          MR. PALMERI:  2365.  Thank you.
16          THE COURT CLERK:  Yes.  You're welcome, sir.
17      (Recess from 11:33 a.m. until 11:42 a.m.)
18          THE COURT CLERK:  Mr. Palmeri and Ms. Wiese, are
19  you there?
20          MR. PALMERI:  Yes, we're back on.
21          THE COURT:  Okay.
22          THE COURT CLERK:  Okay.
23          THE COURT:  All right.  Great.
24          So I have conducted an independent review of the
25  documents that were submitted in-camera.  I ultimately

1  conclude that with one exception the documents were properly
2  withheld as privileged.
3              The one exception, and I'll allow Defense Counsel
4  to make a record on this, but the one exception is Bates
5  Number 49166 through 67.  This is an email communication that
6  I find -- it's an email communication that is forwarded, and
7  it has an additional email (unintelligible).  So there's a
8  base email communication that Mr. Mills then forwards to Ms.
9  Seter, and then contains additional information from Mr.
10 Mills to Ms. Seter.
11             I find that the information that Mr. Mills
12 conveyed to Ms. Seter, the top portion of this, is properly
13 withheld as privileged.  The underlying email, however, is
14 not.
15             And so, again, I'll allow Defense Counsel to make
16 a record, but I intend to require that bottom portion of the
17 communication to be produced as a non-privileged
18 communication.
19             MR. PALMERI:  Your Honor, if I may?
20             THE COURT:  Yes.
21             MR. PALMERI:  Three points.
22             First, the request for production requested
23 communications between Mr. Mills and Mr. Seter.  The email,
24 and the part that you're agreeing is to be redacted, is a
25 communication, that's why we identified it.  But that entire

1  communication is the communication.  So I think to parse it
2  and not produce the communication between Mr. Mills and Mr.
3  Seter but to produce other parts of it, it is outside and
4  beyond the scope of the request for production.
5           Second, as set forth in our paper and in our
6  objection, this is in the Dacono file, the Dacono Gateway
7  Land Company file.  So this is a file that's maintained by
8  Mr. Seter as counsel for Dacono Gateway Land Company, and
9  there has been no waiver by Mr. Mills or anyone on behalf of
10 Dacono Gateway Land Company.  And in fact, as set forth in
11 our paper, Mr. Pulkrabek has stipulated here that there is no
12 waiver by Mr. Mills, so there cannot be a waiver of any
13 attorney-client privileged communications with respect to the
14 Dacono Gateway Land Company.  They certainly are not an issue
15 here.  There hasn't been a waiver by Mr. Mills --
16          THE COURT:  But it's not -- but the underlying
17 communication is not privileged.
18          If, for example, and I'm going to use a different
19 hypothetical than -- as I say, I've read the emails so I know
20 what's in there, and so I'm going to try to distinguish this
21 as much as possible.  But if somebody, if a third party, my
22 courtroom deputy sends me an email that says, I'm going to
23 sue you, and I then forward that email to my attorney and
24 say, what should I do about this, here are my thoughts, what
25 I should do -- my forwarded mail saying, what I -- what

1   should I do about this, you know, what are my options, here
2   are my thoughts, to my attorney, is properly protected by
3   privilege.  But the underlying email from Ms. Ortiz to me is
4   not privileged.  It's not a privileged document.
5            And this routinely occurs where, you know, parties
6   produce the privilege component of the email, or redact the
7   privilege component of the email, but produce the non-
8   privileged portion.
9            What is your basis for arguing -- and again, we
10  can use my hypothetical, the basis for arguing that Ms.
11  Ortiz's email communication to me saying, I'm going to sue
12  you, is privileged?
13           MR. PALMERI:  Well, again, first of all, to use
14  our hypothetical, Mr. Pulkrabek's not asking for that.  Mr.
15  Pulkrabek is only asking for the communications between your
16  courtroom deputy and you, number one.
17           Number two, the communications with the lawyer in
18  this context remain privileged and confidential.  Again, this
19  isn't a situation where Dacono is at issue, the client file
20  here that Seter has is in connection with his representation
21  of Dacono Gateway Company.  And as I understand Mr.
22  Pulkrabek's position, he's not asking for production of any
23  and all communications with respect to the Dacono Gateway
24  Land Company.
25           So the idea that we're going to parse through -- I

1  mean, to take your analogy, Your Honor, then anything that
2  Mr. Seter and Mr. Mills talked about would potentially not be
3  privileged to the extent they're dealing with communications
4  with others.
5          Now, to go back to your comment, though.  The
6  communication from the -- from the client to the lawyer, it
7  is part of the privilege.  Now, the underlying facts may not
8  be.  And to the extent that Mr. Pulkrabek would have been
9  seeking production of the Dacono Land Company matter, you
10 know, a query whether any of those would be within the gambit
11 of his discovery, but I think in the context here the
12 communications and what he's forwarding to Mr. Seter are all
13 part of that communication and they're necessary to give that
14 advice.
15          And I think that whether there are underlying
16 facts there may or may not be, and again whether that would
17 be discovery.  But the context here again, it's:  one, beyond
18 the scope; two, I think it is part of that privileged
19 communication, Your Honor.
20          I think that if a client reaches out to the lawyer
21 and says, these are the relevant facts that I need for advice
22 and I'm providing that to you, I think that is part of the
23 privilege and I think that is protected.
24          Moreover, under 1.6, again in this context, Mr.
25 Seter has an ethical obligation to maintain that.  And again,

1  the --

2              THE COURT:  Which gives way to a court --

3              MR. PALMERI:  -- and as we noted --

4              THE COURT:  Which gives way to a court order.

5              MR. PALMERI:  It doesn't.  I think that it

6  potentially could, but in light, as we quoted, even in the

7  face of a court order, we are required to maintain that.

8              So I think that under the context here, Your

9  Honor, we're so far afield that -- and we've produced so

10 much.  I mean, we are now into the client file of an

11 unrelated client who's a stranger to NGC, who's a stranger to

12 any of the principles of NGC, where Mills is not a party, and

13 that we're going to pierce that client file and try to parse

14 through what communications had been made, again it's beyond

15 the scope of the request, and second, we contend that it

16 would be privileged and/or protected.

17             Number three, or finally, Your Honor, I think that

18 in the context here, and again given the relevance,

19 proportionality, et cetera, I think this (unintelligible)

20 beyond the other objections is simply is too far afield.

21          So, argument number one, beyond the scope of the

22 request for production.

23             Number two, it is part -- it's an attorney -- it's

24 a communication from a client to an attorney for the purposes

25 of receiving legal advice.

1                    Number three, or a subpart of that, it's protected
2    under the statute, or Rule 1.6.
3                    And number four, from a relevance or
4    proportionality, we're so far a field that we ask that it be
5    -- not be disclosed.
6                    So those are our positions.
7                    THE COURT:  I want to hear from Plaintiff.  Again,
8    I don't want to get into the substance of the communications
9    beyond what's been said here, but Defense Counsel indicated
10   that the underlying communication, the one that I'm inclined
11   to say is not privileged, involves Dacono.  It has nothing to
12   do with NGC or this litigation.  Why, even if it's not
13   privileged, why should I order it to be produced?
14                   MR. PULKRABEK:  Okay.  Thank, you, Your Honor.
15                   And I will acknowledge that I am arguing a little
16   bit without all the pertinent facts when we're talking about
17   a situation like this, of course, where I haven't seen the
18   document.  But let me -- let me just start out by saying that
19   the request that was served was a request for all
20   communications that occurred between Mr. Seter and the firm
21   and Mr. Mills during an identified time period.  The reason
22   for that is that the fact that those communications were
23   happening was itself relevant, irrespective of the specific
24   content.  And the reason for that is that after this property
25   was -- that the title to this property was lost on November

1   29th, 2018, it was our initial understanding from Mr. Seter
2   and his office that he did not communicate with Mills after
3   that, so he really had no reason why he would have even known
4   that that property had been lost.
5           So we asked for, okay --
6           THE COURT:  What's --
7           MR. PULKRABEK:  -- tell us when you communicated
8   with Mr. --
9           THE COURT:  What is the --
10          MR. PULKRABEK:  -- Mr. Mills.  And we found out
11  that there were many communications with Mr. Mills that had
12  occurred.
13          THE COURT:  What is the date of that
14  representation that no conversations occurred?
15          MR. PULKRABEK:  I think it's multiple, Your Honor.
16  And I'm paraphrasing, okay?  But there was deposition
17  testimony by Kim Seter that was given in the quiet title
18  case.  There was also a set of communications and a
19  memorandum that was provided to a lawyer from the law firm of
20  Paul Hastings (phonetic).
21          And I don't know if he, if Mr. Seter specifically
22  said, I never communicated with Mills after November 29th,
23  but that was sort of the implication, at least.
24          THE COURT:  November 29th of '18?
25          MR. PULKRABEK:  Of '18.

1            THE COURT:  Okay.

2            MR. PULKRABEK:  Exactly.  Yes.  November 29th of
3   '18.

4            And what we believed was likely to have happened,
5   and I think what the evidence has borne out, is that there
6   were many communications that actually did occur, including
7   with respect to the NGC matters, but also as to a number of
8   other matters, which I think all makes it less likely that
9   Mr. Seter would not have known the disposition of the
10  property after November 29th, 2018.

11           So that was the -- that was the original request
12  that was made.

13           And so to Mr. Palmeri's argument that this
14  document is not even within the scope of the request, I
15  disagree.  It is within the scope of the request.  And that's
16  why Mr. Palmeri presumably listed this and number of other
17  documents on a privilege log.  It was within (unintelligible)
18  was privileged.  Okay.

19           So then turning to the in-camera review that we
20  asked you to do.  The reason for that was we have not asked
21  you to review in-camera every document that they have
22  withheld on their argument that the communication was
23  unrelated to NGC matters, but we asked you to review these
24  because we know that within the time frame that this
25  communication occurred they were also talking about NGC's

1  matter, and in particular getting this money from Kenya that
2  was, at least before November 29th, 2018, to be used to pay
3  the taxes, after that date to be used to recover the property
4  from Arbel Ventures (phonetic).  The fact that there was a
5  communication within that same time period was, you know, of
6  cause for concern for us that we wanted in-camera review with
7  it.
8              So I think the Court's ruling, or comments, makes
9  sense to me in the sense that the underlying document is not
10 itself a privileged communication, therefore wouldn't be
11 protected.
12             Whether it's -- whether this particular document
13 is relevant and we offer it at trial or not I don't know.
14 But with respect to the specific question before the Court,
15 was this a privileged communication, I think the answer
16 appears to be no with respect to the -- at least with respect
17 to the underlying document, and so I agree with the Court's
18 reasoning on that point.
19             And then, finally, let me just comment on Rule 1.6
20 which Mr. Palmeri raised.  You may recall that the parties
21 entered into a stipulation concerning the applicability of
22 Rule 1.6 as it pertains to this lawsuit because we foresaw
23 that Mr. Seter would continue to raise Rule 1.6 in response
24 to a number of questions, separate and apart from the
25 attorney-client privilege.  And what we agreed was that Rule

1   1.6 was not going to apply to discovery in this case.

2   Instead, what would govern would be the attorney-client

3   privilege work product doctrine.

4         And so I think the Rule 1.6 argument has already

5   been addressed and Rule 1.6 is just not a basis for

6   objecting.

7         THE COURT:  All right.

8         MR. PALMERI:  May I -- may I respond, Your Honor?

9         THE COURT:  Very briefly.

10         MR. PALMERI:  Very briefly.

11         First, Your Honor, the title to the property was

12   not lost on November 29th of 2018.  In fact, the taxes were

13   paid.  And we just tendered to the Court, we gave notice to

14   the Court the detailed findings and conclusions that were

15   just issued in the state court quiet title proceedings, and

16   the trial judge there made very detailed findings in a 56-

17   page decision and specifically address these issues, Your

18   Honor.  Title was not lost until, I believe it was May of

19   2019.

20         And the point at the deposition, and the

21   deposition of Mr. Seter was taken in the context of that

22   underlying case.  And Mr. Seter's testimony was that he was

23   not involved in the subsequent transfer of title.  What ended

24   up happening is Mills, on behalf of NGC, was able to secure

25   financing to pay the taxes.  And in fact, the judge, the

1  state court judge, specifically found that Mills was trying
2  to save the property.
3          What ended up happening is, then he, Mr. Mills, on
4  behalf of NGC, subsequently lost the property in a series of
5  transactions with the lender, and then title was lost in May
6  of 2019.  The context of Mr. Seter's testimony was that he
7  was not involved in that.  That's the context there.  Mr.
8  Pulkrabek was not at the deposition so, you know, I
9  understand he wasn't a party to that, but that was the
10 context of it.
11         So to the extent that Mr. Pulkrabek wants to test
12 that, we've identified -- I mean, there were other
13 communications.  Mr. Seter is not denying that there were
14 communications with Mr. Mills in that period of time, and
15 we've produced those.  And he has evidence of that, just that
16 we're looking at it in emails in February of 2019.
17         So we've never -- we've never disputed that he had
18 communications with Mills.  The issue has to do with whether
19 he had communications with Mills where he was involved in the
20 subsequent transactions where the property was lost and he
21 was not.
22         Now, in any event, second, to go back to your
23 question, I don't believe Mr. Pulkrabek addressed it, what
24 does this have to do with Dacono?  That if Mr. Seter is
25 communicating with Mr. Mills with respect to the Dacono

1  Gateway client matter, to the extent Mr. Pulkrabek says he
2  wants to get this information to test or to contradict Mr.
3  Seter's testimony that he had communications with them,
4  that's established even just by the fact that we've
5  identified that he had communications with them, but it's
6  unrelated to NGC.  And I think even in your review of this,
7  Your Honor, I don't want to overstate it, but you
8  acknowledged that this has nothing to do with NGC.
9              So again, I don't -- I don't think we have
10 anything to add to the earlier comments, but I do want to
11 clarify that the idea that somehow, you know, Mr. Seter made
12 a blanket statement that he had no communications with Mills
13 about anything is not what his testimony was, and again, I
14 think it's out of context.
15             Where we just focus here is we've produced the NGC
16 matter, we've produced those communications, Mr. Seter can be
17 deposed on that.  But to just start opening up all of the
18 other client matters that are completely unrelated to NGC,
19 from our perspective, is beyond the scope of the request and
20 would be improper.
21             THE COURT:  Okay.
22             MR. PULKRABEK:  Your Honor, may I just briefly
23 respond to the new arguments that Mr. Palmeri is making?
24             THE COURT:  There's no need.  I'm prepared to
25 issue my ruling.

1            As I indicated previously, I conclude with respect
2   to all documents, except for one, that they are properly
3   withheld as privileged communications.  They do not involve
4   communications between Mr. Seter and Mr. Mills concerning
5   NGC.  And as a result, the communications remain privileged
6   by Mr. Mills, or whichever entity he was acting on that was
7   not NGC.
8            I further conclude that with respect to Dockets
9   49166 and 49167, that the top portion of 49166 was properly
10  withheld as privileged for the same reasons.  However, the
11  bottom portion of 49166 onto 49167, is not a privileged
12  document.  It is a document from an individual to Mr. Mills
13  cc'ing several other individuals, none of whom to my
14  knowledge are Mr. Mills' attorneys.  And even if they were,
15  it's a third party communication, not a communication between
16  Mr. Mills and his counsel.
17           The argument that it's outside the scope, I don't
18  agree with.  It was produced -- withheld, but withheld on
19  privileged grounds in response to the request, and therefore,
20  it falls within the scope of the request, nor can I conclude
21  that it is ultimately irrelevant.  It deals with Mr. Mill's
22  financial situation.  His financial situation is arguably at
23  issue here during this time frame given the allegations
24  concerning the loss of the property, of NGC's property,
25  whether or not those taxes could have been paid.  And so I

1  cannot conclude ultimately that it is irrelevant, and
2  therefore, I find that it is discoverable and I will order
3  the document to be produced with appropriate redactions for
4  the top half of 49166.
5              All right.  Thank you, everybody.  We'll be in
6  recess.
7              MR. PALMERI:  Your Honor, if I may?  I trust we
8  have 14 days to submit an objection.
9              THE COURT:  Yes.  I'll stay production --
10             MR. PALMERI:  Okay.  Thank you.
11             THE COURT:  -- for 14 days so that you can file an
12 objection with Judge Moore.
13             MR. PALMERI:  Thank you.
14             THE COURT:  Okay.  We'll be in recess.
15             MR. PULKRABEK:  All right.  Thank you, Your Honor.
16                      (Time noted:  12:04 p.m.)
17                           * * * * *

<u>CERTIFICATE</u>

1
2      I, RANDEL RAISON, certify that the foregoing is a
3 correct transcript from the official electronic sound
4 recording of the proceedings in the above-entitled matter, to
5 the best of my ability.
6
7   *[signature: Randel Raison]*
8 _____          September 28, 2022
9 Randel Raison
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25