1

1          UNITED STATES DISTRICT COURT
                 DISTRICT OF COLORADO
2

3  NGC DEVELOPMENT, LLC,         .  Case No.  21-cv-01746-RM-STV
                                 .
4            Plaintiff,          .
                                 .
5  vs.                           .
                                 .  Alfred A. Arraj Courthouse
6  KIM SETER, *a Colorado citizen*,.  901 19th Street
   SETER & VANDER WALL, P.C.,    .  Denver, CO  80294
7                                .
                                 .
8            Defendants.         .
                                 .  May 11, 2022
9  . . . . . . . . . . . . . . . .  11:00 a.m.

10      **TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE**
        **SCOTT V. VARHOLAK, UNITED STATES MAGISTRATE JUDGE**
11
   APPEARANCES:
12
   For the Plaintiff:          Keating Wagner Polidori &
13                                Free, P.C.
                               By:  Ross Whiting Pulkrabek
14                             1290 Broadway
                               Suite 600
15                             Denver, CO  80203
                               (303) 534-0401
16
   For the Defendants:         Gordon Rees Scully
17                                Mansukhani, LLP
                               By:   John M. Palmeri
18                             BY:  Rose Elizabeth Zetzman
                               555 17th Street
19                             Suite 3400
                               Denver, CO  80202
20                             (303) 534-5145

21 Court Recorder:             Clerk's Office
                               U.S. District Court
22                             1929 Stout Street
                               Denver, CO  80294
23

24

25

1   Appearances Continued:

2
    Transcription Service:          AB Litigation Services
3                                   216 16th Street, Suite 600
                                    Denver, CO  80202
4                                   (303) 296-0017

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

1                    (Time noted:  11:00 a.m.)

2               THE COURT CLERK:  All rise.  Court is in session.

3               THE COURT:  Please be seated.

4               This is 21-cv-1746.  Can I have entries of appear

5     please?

6               MR. PULKRABEK:  Yes.  Good morning, Your Honor.

7     Ross Pulkrabek on behalf of the plaintiff, NGC Development,

8     LLC.

9               THE COURT:  Good morning.

10               MR. PALMERI:  Good morning, Your Honor.  John

11     Palmeri and Rose Zetzman appearing on behalf of defendants

12     Kim Seter and Seter & Vander Wall, P.C.

13               THE COURT:  And good morning.

14               Let me ask a preliminary question.  Have the Mills

15     been informed of the subpoena and had an opportunity to take

16     a position with respect to the subpoena?

17               MR. PALMERI:  Excuse.  Your Honor, the status is

18     that Mr. Mills has been sued.  He's a defendant in a lawsuit

19     in Florida filed by a company called Avid Hunter Ltd, which

20     is a member of NGC Development LLC.  And so we examined the

21     status of that ongoing litigation.  He is not represented at

22     this time in that case, however his last filing, and I think

23     it was May 3rd, was that he was in the process of getting

24     counsel.

25               I've been hesitant to contact him, Your Honor,

1  because he is -- right now, he is not represented.  He was at

2  some point in time and I had talked to his counsel back then.

3  I don't know if it is going to be in his interest whether he

4  would waive his privilege, and I think that he needs to have

5  that and make a decision to do that.

6        Again, our position is that Avid Hunter has that

7  lawsuit and they could pursue this discovery from him in that

8  case.

9        THE COURT:  Well, I agree that it's, that he needs

10  to have a say in the matter, because it's his privilege, it's

11  not Seter & Vander Wall's privilege.  And so I agree that he

12  needs to have the opportunity to raise an objection, should

13  he wish to raise an object.

14        I could tell the parties my preliminary thoughts

15  on all of this, but again, it's without his position.  Is

16  with respect to the fee agreements, et cetera, that generally

17  fee agreements are not privileged.  However, it is possible

18  that they do contain some privilege.  Again, it depends upon

19  the nature of what's in that retainer letter.  If it's a

20  standard retainer letter that says we are going to, you know,

21  represent you for $400 an hour, it's not privileged, but if

22  there's something in there that conveys some sort of legal

23  advice it may be.

24        What the courts have done in that situation, and

25  I'll cite so that the parties have some guidance moving

1   forward, *Garrity v. Governance Board*, 2021 WL 3033278 --

2          MR. PULKRABEK:  I'm sorry, Your Honor, do you mind

3   repeating that?

4          THE COURT:  Sure.  It's *Garrity v. Governance*

5   *Board*, and that's 221 WL 3033278 at star 7, and it's a

6   District of New Mexico case, but it summarizes, I think in

7   good detail, the Tenth Circuit law on the issue.

8          And so what I'd be inclined to do, again once I

9   hear from Mr. Mills, is to order the defendant to produce

10   either the documents or a privilege log, if they believe them

11   to be privileged.  I recognize the argument raised by

12   Defendant that the documents are arguably not within their

13   control because they can't simply turn them over, regardless

14   of whether they're privileged or not, without violating their

15   ethics obligation.  And I agree with Defense Counsel that

16   absent an order it would have been inappropriate for them to

17   simply turn over documents because of the ethics rules.

18          That said, I can order them to turn over non-

19   privileged documents, and then that eliminates this control

20   issue, because that removes the ethical impediment that they

21   face.  Now, the simpler way to do all of this, maybe, as

22   Defense Counsel suggests, which is to go through the Florida

23   hearing, especially with the same attorneys representing in

24   the Florida matter and go through that approach, the only

25   hesitancy I have on all of that is it's possible that Mr.

1   Mills hasn't retained these documents.  I don't know the

2   answer to that.

3           So it may be that some of these documents are

4   within the control of the defendant that don't exist anymore,

5   because I don't know what Mr. Mill's record-keeping is.  I'm

6   quite confident that a law firm maintains all of their

7   records of retention and grievance and all of that.  I'm not

8   as convinced that an individual necessarily would.  I just

9   don't know the answer to that.

10           However, I do agree, and here I'm going to cite

11  another case that the parties should look at, which is

12  *Wachous, W-A-C-H-O-U-S, Enterprises, LLC v. Pacific National*

13  *Capital*.  That's at 2017 WL 4310231 at star 4 note 29.  And

14  this is a District of Kansas case from 2017 in which the

15  Court held, as I'm going to hold today, that because the

16  privilege rests with the client and not with the law firm,

17  that the client needs to be informed of the subpoena request

18  and have an opportunity, should they do so, should they

19  decide to do so, whether that's either through guidance to

20  Seter & Vander Wall, P.C., whether that's through retention

21  of a new attorney, whether that's pro se, in some way Mr.

22  Mills should have the opportunity, because it's his

23  privilege, to make whatever record he wishes with respect to

24  these documents.

25           And so what I'm going to do is I'm going to

1  continue this hearing.  I will give Mr. Mills 21 days in

2  order to submit any record that he wishes.  I will order the

3  defense, again because the defendant is a law firm that

4  previously represented Mr. Mills, I don't see any harm in the

5  defendant -- I recognize that counsel's always hesitant to

6  reach out to somebody who's pro se, but I will order you to

7  provide them with the subpoena, with a copy of my minute

8  order from today, and instruct Mr. Mills that he has 21 days

9  to make whatever record he wants.  Again, whether it be

10  through Seter & Vander Wall, whether it be through new

11  counsel, or himself pro se, with respect to this subpoena so

12  that he can protect the privilege should he desire to do so.

13          And then I'll continue this discovery dispute

14  hearing to allow any supplemental statements, either through

15  Mr. Mills or through the parties, or if the parties decide

16  this is too much of a hassle, we're just going to go through

17  Florida and deal with it that way, you can just ask me to

18  vacate this hearing.  But I'll continue this hearing until --

19  so that 21 days would put as May 1st.  I'll give until May

20  3rd for the parties, including Mr. Mills to --

21          MR. PULKRABEK:  I'm sorry, June 3rd?

22          THE COURT:  June 3rd.  Yeah.  Boy this year's

23  flying by.  June 3rd, for either Mr. Mills or any of the

24  parties to file any supplement to this discovery dispute.

25  And then I'll set the discovery dispute hearing -- shoot, I

1  roll into criminal duty, unfortunately.  Well, I'm just going

2  to have to set it.  We're going to be limited to one hour,

3  because I'm going to be setting this while I'm on criminal

4  duty.  But I think we can -- I think I can handle it within

5  that one hour.

6          Are the parties available June 15th at 9:00 a.m.?

7          MR. PALMERI:  Your Honor, unfortunately, I'm in an

8  arbitration the entire week of June 13.

9          THE COURT:  Okay.

10          MR. PALMERI:  I'm generally open that following

11  week.

12          THE COURT:  How about June 21st at 2:30?

13          MR. PALMERI:  That works for me, Your Honor.

14          MR. PULKRABEK:  Yes, Your Honor.

15          THE COURT:  Okay.  Then I'll give, since it's not

16  going to be impacted by -- I'll give until June 10th then for

17  those supplemental statements.  Give Mr. Mills a little bit

18  of extra time if he obtains counsel.  Since that's

19  (unintelligible) it will give me plenty of time to review it.

20  So I'll set June 10th as the deadline for the parties to

21  submit any supplemental on that.

22          Again, if you all resolve this or you decide you

23  want to deal with it in Florida, then just notify my chambers

24  and we'll vacate that date.  But otherwise, we'll take it up

25  on the 21st.

1            Anything further then that we can do here today?

2            MR. PALMERI:  The only other issue I'd like to

3  raise with the Court has to do with deposition of Mr. Seter,

4  which actually may be impacted by this.  We had slotted him

5  in for deposition I believe May 25th, but there's an issue.

6  I have a concern regarding the length of his deposition.

7  Here's my position, and here's why.

8            My position is that his deposition in this case

9  should be limited to no more than four hours.  And the reason

10  I say that, Your Honor, is he was deposed in one of the

11  underlying cases for two days.  And in fact, counsel for NGC

12  in that case was represented by the Faegre law firm

13  (phonetic) in that case.  They took the lead, spent

14  approximately three hours with him during that, so they've

15  already examined him for three hours.  He went on again, they

16  had other counsel, he was deposed for two days.

17            So my position with Mr. Pulkrabek in this matter

18  is, it's the same lawyers, it's relating to many of the same

19  issues, especially to the extent they're background

20  questions, et cetera, he's already been examined for over two

21  days.  I'm more than happy to make him available and have him

22  sit again, but my position is that we should be able to

23  complete that in four hours.

24            I don't know if these issues are going to impact

25  that or the length of it or not, but I've conferred with Mr.

1   Pulkrabek on that and that's the request that I have, that

2   he'd be limited to four hours, which would give him a total

3   of seven by this lawyer -- or, I'm sorry, by this party, and

4   that doesn't even count the other day and a half that he was

5   deposed.

6           THE COURT:  Okay.  Let me hear.

7           MR. PULKRABEK:  Your Honor, yeah, we object to

8   that for a number of reasons.

9           Number one, this is a different lawsuit.  Mr.

10  Seter's a party to this case.  The issues are different.  And

11  I'm going to have probably a full day's worth of questions

12  for Mr. Seter about liability issues pertaining to this case.

13  I'm not going to replow the same earth that has been plowed

14  already.  And I told Mr. Palmeri if he thinks I'm getting

15  long-winded he can harass me as much as he wants.

16          But I also, only jokingly, said, Mr. Palmeri, I'm

17  a little concerned that there's going to be seven hours'

18  worth of objections to my questions, just because I

19  anticipate that I will ask a question, Mr. Palmeri may well

20  take the position that this infringes upon the attorney-

21  client privilege, we'll probably have to confer some about

22  that, and that's just going to be the way this particular

23  deposition goes.

24          And then, finally, we are going to have to

25  continue the May 25th deposition to a different date in light

1   of your rulings today.  And I hate to come back to you yet

2   another time in order to haggle over another three hours like

3   that.

4              THE COURT:  I agree.  I think it's going to have

5   to be continued, because obviously these issues are tricky

6   for counsel because they are in a position where they don't

7   want to violate their own ethical obligations.  This is

8   always the most complex area of law for any attorney in

9   dealing with these type of issues.

10             I honestly think you probably are going to need

11  the order from me on these outstanding issues so that -- for

12  example, if I find and I order the Seter law firm to turn

13  over, for example, fee agreements, then they then have the

14  order that protects them from voluntarily disclosing things

15  that aren't privileged but there's still the confidentiality

16  aspect of it that protects them.

17             So I think it makes sense to continue this.  I'm

18  inclined to allow seven hours, because it is -- there is

19  going to be an objection to most questions, understandably.

20  And he is the defendant in this lawsuit and it may involve

21  different issues than the other one.  So I'm not going to

22  limit it to seven hours, but I do think you all should

23  continue it until after we have the hearing next month in

24  which I can issue a ruling on the privilege issues.

25             And I think the parties should be prepared at that

1   hearing, and submit in the supplemental briefing, any order

2   you need me to enter with respect to the deposition.  So

3   again, I will see the statements.  I'm obviously not inclined

4   to find a waiver of the privilege on anything I've seen so

5   far, so an objection on privilege is an appropriate

6   objection.

7            An objection on confidentiality, I think, is an

8   appropriate objection until we get to a -- unless I order

9   otherwise.  And so to the extent you need an order, your

10  client needs an order protecting him ethically from, quote,

11  "voluntarily disclosing something," you know, out of an

12  abundance of caution he can -- we used to do in the -- in the

13  criminal context is anytime, you know, say ineffective

14  assistance was brought, we'd assert the privilege.  The judge

15  would say it's been waived because it's been brought into

16  issue and order us to answer, and then we'd answer.  To the

17  extent you need something similar to that along this -- now,

18  again, that's different because that's actually waiving

19  privilege as opposed to just confidentiality, whereas this I

20  don't see anything that would waive the privilege, but it

21  does waive the confidentiality component, or at least bring

22  in the confidentiality component.  To the extent your client

23  needs something from me ordering it, just be prepared to

24  address that at the hearing.  Because I don't want to

25  continue the deposition because your client feels that they

1  need to assert the confidentiality to then have me turn

2  around and say, okay, now I'm ordering it to protect his

3  ethics.

4          So just everybody think about that before the next

5  hearing.

6          MR. PULKRABEK:  Your Honor, would you entertain a

7  something -- a request like that from us, as well?  I know

8  that we're not the ones that would be asserting Rule 1.6 --

9          THE COURT:  Yeah.

10          MR. PULKRABEK:  -- but I think it's in a clear

11  path --

12          THE COURT:  Yeah.  I think probably the cleanest

13  way is you request the order, your clients state the

14  objection, and then to the extent I overrule the objection,

15  now your client has protected it and you get what you want

16  out of it.

17          MR. PULKRABEK:  And there's one related issue that

18  I just want to point out for the Court so you have that in

19  your mind, and also for Mr. Palmeri's benefit as well when he

20  talks to Mr. Mills.  There are two entities that I know Seter

21  was actively doing work for that at the time were managed by

22  Mills, Federal -- or I'm sorry, Founders Ridge Development

23  and Founders Ridge Development II.  These were a couple

24  entities that may somewhere in the mix here.  And to the

25  extent that Mr. Seter was communicating with Mills about

1  those entities, my client now controls those entities as

2  well.  So I just wanted to kind of put that out there as well

3  so that Mr. Palmeri is aware of that.

4          THE COURT:  Okay.  Go ahead.

5          MR. PALMERI:  Your Honor, I appreciate your

6  guidance.  Just thinking out loud so that we can address as

7  much as we can in June.  I think the way this might play out

8  is I'm happy to reach out to Mr. Mills.  I do not think he's

9  going to agree to waive anything, would be -- would be my

10  assumption.  Whether it's that he won't agree, or whether I

11  would hear back from him, what have you, I don't know.

12          So I think we are going to have to address the

13  privilege side of this as well.  I think you understand where

14  we're coming from on the ethical side, and if we get an

15  order, we'll move forward.

16          THE COURT:  Right.

17          MR. PALMERI:  But I think that we might want to be

18  prepared to address in June, if he does not waive the

19  privilege, how we're going to handle that.

20          THE COURT:  I think the answer to that is that

21  your client needs to prepare a privilege log of the

22  documents.  I'm not saying that the privilege is waived in

23  any way.  I don't even think there's been an argument that

24  the privilege has been waived.  Rather, the argument is some

25  of these items aren't privileged, and I tend to agree

1 perhaps.

2          Now, again, it depends.  I don't know what's in

3 these because I haven't seen an in camera review.  But if

4 it's the standard, you know, we'll represent you for $450 an

5 hour, you pay 2,000, you know, a $10,000, you know, retainer

6 fee, and it's this is the, you know, my work is general

7 business work, that's not privileged.

8          Now, if in there it has, you have asked me to

9 represent you with respect to your dispute involving X, Y, Z,

10 then some of that may be privileged and a redaction may be

11 appropriate, but then there needs to be a privilege log with

12 it.  I get that that puts Mr. Mills in a strange situation

13 because now he may have to pay to have a privilege log, you

14 know, to have his -- your client prepare the privilege law.

15 I don't know how that works between you, or between your

16 client and him, but that's the nature of litigation,

17 unfortunately.  So I think a privilege log will need to be

18 prepared.

19          MR. PALMERI:  We do not have an ongoing

20 relationship representing him, Your Honor, so --

21          THE COURT:  I recognize that, but this does happen

22 at times, that there's the past relationship, the attorney

23 still has the obligation to maintain the confidentiality.

24 But in the cases that I've come across what courts have done

25 in this situation is they've ordered the law firm, when the

1   law firm is the one subpoenaed, to consult with the client,

2   as I've done -- and again, a lot of this is set forth in that

3   Walkus Enterprises (phonetic) case.  And then to the extent

4   the client doesn't waive the privilege, which they're

5   unlikely to, then you prepare a privilege log, you turn over

6   the privilege log, and then -- and then if there's any

7   questions on the privilege log we can address that down the

8   road.  That's going to be a different hearing.  That's not

9   going to be the June hearing.

10          But what likely will happen is I will order you to

11  prepare a privilege log, and if there's something that's not

12  privileged, such as a generic retainer agreement, that simply

13  gets turned over after Mr. Mills has had the opportunity to

14  make whatever record he wishes to make as to whether that's

15  privileged or not privileged.

16          I just don't want to put the onus on your client

17  to have to, without any consultation, make the determination

18  that this isn't privileged in case Mr. Mills believes it is

19  for some reason and wants to make some argument that it is

20  privileged.

21          MR. PALMERI:  And I do appreciate that, because

22  there is ongoing litigation.

23          THE COURT:  Right.

24          MR. PALMERI:  I will note that the lawyers in

25  Florida, and Mr. Pulkrabek can correct me if I'm wrong, it's

1    not the same firm or the same lawyers.

2              THE COURT:  Okay.

3              MR. PALMERI:  It's a Florida lawyer down there.

4              THE COURT:  Okay.

5              MR. PALMERI:  So similar parties, similar issues,

6    but different counsel.

7              THE COURT:  Okay.

8              MR. PULKRABEK:  Your Honor, just in the interest

9    of moving this along, would be appropriate if Mr. Mills were

10   to submit a privilege log with whatever position statement he

11   would provide on June 10th so that that's out there and we

12   don't have to come back to a further round later?

13             And then, also, if he's going to take the position

14   that some select portion of the fee agreements would contain

15   privilege, could those be submitted for an in camera review?

16             THE COURT:  Let's see where we are come June 10th

17   when he submits it, because they don't yet have the order

18   where I say -- I told him what preliminarily my thoughts are,

19   but I want Mr. Mills to have a chance to respond.  And so if

20   by June 10th Mr. Mills agrees, okay, fine, they can turn over

21   the retainer agreements, it doesn't have anything of any

22   nature, then fine, then just go ahead and do that.  But if he

23   objects to that, I want to let him make the record before we

24   get there.

25             MR. PULKRABEK:  Okay.

```
 1              THE COURT:  Once we get to June 25th, I think I
 2   can turn you over quickly again for another discovery dispute
 3   hearing if need be.  The issue is, frankly, I roll right into
 4   criminal duty and so my civil weeks right before and right
 5   after are always a mess so I try not to set any civil during
 6   my criminal duty because it's crazy, so.
 7              MR. PULKRABEK:  I understand.
 8              THE COURT:  All right.
 9              MR. PALMERI:  I will forward that order.  I think
10   that order will help, Your Honor.
11              THE COURT:  Okay.
12              MR. PALMERI:  I think I understand right where
13   you're coming from.  And if I can expedite it I will.
14              THE COURT:  Okay.
15              MR. PALMERI:  But like I said, just in fairness to
16   everybody, I'm afraid we're going to be on June 10th and he's
17   not going to waive anything.
18              THE COURT:  Well, the issue may be, I mean, again,
19   I don't know what's in the fee agreement, but let's assume
20   it's just a generic fee agreement, Mr. Mills may say, all
21   right, I see the writing on the wall, the judge is going to
22   order this.  There's no point in me, you know, hiring counsel
23   to fight this or whatever, and may agree to turn some of this
24   stuff over voluntarily.  Again, assuming it doesn't contain
25   privilege.  But let's see where we are, let him make his
```

1   record, and then I'll issue whatever order I need to issue

2   come mid-June.

3              MR. PALMERI:  Again, Your Honor, bigger picture.

4   I don't have the deadlines off the top of my head, but I

5   think we're looking at expert disclosures set right now, I

6   think, August, September.  I think this may require --

7              THE COURT:  Yea, if the parties --

8              MR. PALMERI:  -- some push.

9              THE COURT:  Yeah, if the parties need to move

10  those deadlines just file an unopposed motion with new

11  deadlines, and that will -- this is a Judge Moore case,

12  that'll be referred to me and I'm happy to grab that.  Just

13  cite, you know, briefly that ongoing privilege discovery

14  dispute issues and the parties need to move those deadlines.

15             MR. PALMERI:  It would seem --

16             THE COURT:  But just confer over that.

17             MR. PALMERI:  Yeah, maybe we can see where we are.

18             THE COURT:  Yeah.

19             MR. PALMERI:  And I know that we have to do that

20  now, but --

21             THE COURT:  Sure.

22             MR. PALMERI:  -- you know.

23             MR. PULKRABEK:  I think I agree 100 percent with

24  Mr. Palmeri and where he is going on that.

25             THE COURT:  Okay.

 1                    MR. PULKRABEK:  And the other thing you should be

 2    aware of, Your Honor, is the judge in the quiet title action,

 3    which is an important underlying case, maybe not underlying

 4    case, but it will impact the damages in this case, that still

 5    hasn't been decided.

 6                    THE COURT:  Okay.

 7                    MR. PULKRABEK:  It's been fully tried, it's been

 8    submitted, it hasn't been cited yet.

 9                    THE COURT:  Okay.

10                    MR. PULKRABEK:  And so I know we're both waiting

11    to see --

12                    THE COURT:  Okay.

13                    MR. PULKRABEK:  -- how that turns out.

14                    THE COURT:  All right.

15                    MR. PALMERI:  And then there's actually one other

16    lawsuit as well pending in Denver District Court, and that

17    case is scheduled for trial in November.

18                    THE COURT:  Okay.

19                    MR. PALMERI:  So a lot of moving parts.

20                    THE COURT:  All right.  Sounds good.

21                    MR. PULKRABEK:  All right.  Thank you.

22                    THE COURT:  All right.

23                    MR. PALMERI:  Thank you, Your Honor.

24                    THE COURT:  Thanks, everybody.  We'll be in

25    recess.

1          THE COURT CLERK:  All rise.

2                    (Time noted:  11:24 a.m.)

3                         *  *  *  *  *

4                         CERTIFICATE

5        I, RANDEL RAISON, certify that the foregoing is a

6   correct transcript from the official electronic sound

7   recording of the proceedings in the above-entitled matter, to

8   the best of my ability.

9

10

11   _____          October 10, 2022

12   Randel Raison

13

14

15

16

17

18

19

20

21

22

23

24

25